UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| RONALD KAPCHE, KYLA KAPCHE, RK RESOURCES, L.L.C., & RK RESOURCE PARTNERS, L.P., <br><br>*Plaintiff*, <br><br>v. <br><br>PHILIP SEIFERT & LIBERTY CAPITOL, L.L.C., <br><br>*Defendant*. | § § § § § § § § § § § § | CIVIL ACTION H-06-00083 |

## ORDER

Pending before the court is defendant's motion for dismissal. Dkt. 29. Upon consideration of the motion, response, and reply of the parties, and the applicable law, the motion to dismiss is DENIED. However, as explained below, the court finds that, in the interest of justice and judicial efficiency, venue should be in Virginia. Therefore, the court, on its own motion, determines that the case will be TRANSFERRED to the Eastern District of Virginia.

### I. BACKGROUND

Plaintiffs Ronald Kapche, Kyla Kapche, RK Resources, L.L.C., and RK Resources Partners, L.P. filed suit in Harris County District Court, asserting claims of breach of contract, fraud, and negligent misrepresentation against Philip Seifert and Liberty Capitol, L.L.C. Plaintiffs engaged Liberty Capitol to provide financing options for plaintiffs' acquisition of a temporary staffing agency. Dkt 1, Ex. B. Defendant presented plaintiffs with a proposal from Platinum Funding Corporation, which plaintiffs rejected due to the allegedly onerous terms. In order to induce

plaintiffs to accept Platinum's proposal, defendant indicated that, despite the specific terms of the agreement: the agreement was short-term; long-term financing would be arranged within sixty to ninety days; and the agreement could be terminated at any time without penalties. Relying upon these representations, plaintiffs accepted the proposal and entered into the agreement. *Id.* Defendant allegedly failed to provide the long-term financing or make efforts to terminate the agreement with Platinum as promised. Plaintiffs were forced to terminate the agreement directly with Platinum and pay a penalty of over $400,000 to do so. *Id.*

Defendant answered, subject to a Special Appearance, challenged personal jurisdiction in Texas, and sought dismissal. Prior to a ruling by the Harris County District Court, Seifert removed the action to the Southern District of Texas on the basis of diversity of the parties. Liberty Capitol consented to removal, subject to its Special Appearance. Dkt. 28. Ultimately, the claims against Seifert were settled, and he was dismissed from the action on May 27, 2007. The claims proceed against Liberty Capitol. *Id.*

The following key facts have been asserted by the parties in the pleadings and defendant's motion and are accepted as true for the purposes of determining whether personal jurisdiction is proper.[1] The individual plaintiffs are residents of Texas and the entity plaintiffs are organized under the laws of the state of Texas; however, Liberty Capitol is organized under the laws of the State of Virginia. Dkt. 1, Ex. B; Dkt. 28. In fact, Liberty Capitol does not operate offices in Texas; have employees or agents in Texas; maintain bank accounts in Texas; or own, rent, lease, or control real or personal property in Texas. Dkt. 28. Further, Liberty Capitol does not market itself or generally

---

[1] Jurisdictional assertions and allegations are treated as truthful in an inquiry to establish personal jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

conduct business in Texas. The agreement between plaintiffs and defendant is allegedly the only contract that Liberty Capitol has entered into with a Texas resident. *Id.* Defendant maintains that the agreement was to be performed in Virginia and highlight the choice-of-law provision, which mandates that Virginia law control any dispute between the parties. *Id.*

Defendant seeks dismissal for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). Dkt. 28, 29. In their response to defendant's motion, plaintiffs stated only that they did not oppose transfer of venue to the Eastern District of Virginia. Dkt. 30.

## II. ANALYSIS

**1.     Personal Jurisdiction**

Federal courts are courts of limited jurisdiction. *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 710 (1982); *Kurth v. Gonzales*, 469 F. Supp. 2d 415, 420 (E.D. Tex. 2006). Federal courts sitting in diversity may exercise personal jurisdiction to the extent permitted by the laws of the state in which the court sits. *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424 (5th Cir. 2005) (citing *Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir. 1997)). The Texas long-arm statute allows jurisdiction to be exercised to the extent allowable under the Due Process clause of the Fourteenth Amendment. *Fielding*, 415 F.3d at 424-25 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413-14 (1984)).

When the court rules on personal jurisdiction without an evidentiary hearing, the plaintiff must make a prima facie showing of jurisdiction. The burden then shifts to the defendant to demonstrate that the assertion of jurisdiction would be unfair; however, such demonstrations are rare. *Wein Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999). In deciding whether to exercise

personal jurisdiction, the court can consider the entire contents of the record, including affidavits. *Paz v. Bush Engineered Metals, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006).

The Due Process analysis entails a two-part inquiry. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291-92 (1980); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). First, Due Process requires sufficient minimum contacts with the forum, "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co.*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Minimum contacts are established through the assertion of either general or specific jurisdiction. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 865 (5th Cir. 2001). General jurisdiction requires "continuous and systematic" contacts with the forum. Clearly, defendant does not conduct regular, frequent, or substantial activities in the state such that are "purposefully availing" themselves of the privileges of conducting business in Texas and "invoking the benefit and protection of its laws." *S&D Trading Acad., L.L.C. v. AAFFIS, Inc.*, 494 F. Supp. 2d 558, 564 (S.D. Tex. 2007). In fact, defendant employs no Texas residents and operates no offices in Texas; has no personal or real property in Texas; and does not specifically market its services to Texas residents. Dkt. 28. Thus, the exercise of general jurisdiction over defendant is not proper.

Alternatively, specific jurisdiction is based on a "'substantial connection' with the forum." *Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 230 n.12 (Tex. 1991) (quoting *Burger King*, 471 U.S. at 475 n.18). "Where the activities of a defendant in a forum are isolated or disjointed . . . jurisdiction is proper if the cause of action arises from a particular activity." *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). "[I]f a plaintiff's claims relate

4

to different forum contacts of the defendant, specific jurisdiction must be established for each claim." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 275 (5th Cir. 2006). In the present case, however, the actions giving rise to the claims of breach of contract, fraud, and negligent misrepresentation are either the same or intertwined and also involve the same parties. As such, specific jurisdiction for each claim need not be addressed separately.

Although a single act can be sufficient to establish specific jurisdiction, contracting with a resident of the state is, alone, generally insufficient to confer personal jurisdiction. *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 344-45 (5th Cir. 2004); *ICEE Distribs., Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 591 (5th Cir. 2003); *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999); *Stuart v. Spademan*, 772 F.2d 1185, 1192-93 (5th Cir. 1985). In *Holt*, a case with notably similar facts, the court determined that entering into a contract with a Texas resident, sending an agreement to Texas for acceptance, partial performance in Texas, and engaging in extensive telephonic and written communication with the Texas resident were insufficient to subject the nonresident to personal jurisdiction. *Holt Oil & Gas Corp. v. Harvey*, 801 F.2d 773, 777-78 (5th Cir. 1986).

Additionally, the *Holt* court noted that a choice-of-law provision, also included in the agreement between plaintiffs and defendant, specified that the nonresident's law would govern any dispute. *Id.* at 778; Dkt. 28. Although a choice-of-law provision may provide guidance, it is not dispositive in determining whether personal jurisdiction exists or is lacking. *Rimkus Consulting Group, Inc. v. Cammarata*, No. H-07-0405, 2007 WL 1520993, at *7 (S.D. Tex. May 22, 2007) ("A choice-of-law provision by itself is insufficient to create personal jurisdiction . . . but it is nonetheless a factor in the minimum-contacts analysis."). *Accord Stuart*, 772 F.2d at 1195. Moreover, a choice-

of-law provision is not weighed as heavily as a forum selection clause. *Rimkus Consulting Group, Inc.*, 2007 WL 1520993 at *7. Notwithstanding the existence of a choice-of-law provision in the agreement between plaintiffs and defendant, a forum selection clause was noticeably absent. From such an obvious omission, one could infer the parties did not intend to specify Virginia as the only suitable forum for exercising personal jurisdiction and resolving disputes that arose under the agreement.

A narrow reading of *Holt* might imply that the exercise of personal jurisdiction is not appropriate in the present case; however, to determine whether a contract at issue in a breach of contract claim "represents a substantial enough connection with Texas to constitute 'purposeful availment,' the [c]ourt considers the following factors: (1) prior negotiations; (2) future consequences; (3) the terms of the contract; and (4) the [p]arties' actual course of dealing." *S&D Trading Acad., L.L.C.*, 494 F. Supp. 2d at 564 (referencing *Burger King Corp.*, 471 U.S. at 479). The court should also inquire whether the "nonresident's forum contacts were instrumental in the formation of the contract or its breach." *Burger King Corp.*, 471 U.S. at 478. Jurisdiction is proper where the contacts "proximately result from actions by the defendant himself that create a substantial connection with the forum state." *Stuart*, 772 F.2d at 1194. "[P]arties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to the regulations and sanctions for the consequences of their activities." *Burger King Corp.*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)).

Although the defendant may not have actively marketed its services to Texas residents, during the course of negotiations defendant reached out to Texas residents by encouraging plaintiffs to accept the Platinum proposal. The relationship between plaintiffs and defendant was initiated and

designed purely to obtain funding for the acquisition of the temporary staffing agency; however, defendant arguably exceeded the scope of the initial agreement by offering to provide additional services to plaintiffs if the Platinum proposal was accepted. Such services included identifying long-term financing options and assisting in the termination of the agreement with Platinum if plaintiffs desired. These promises and offers, coupled with plaintiffs' acceptance of the proposal, created "continuing relationships" with plaintiffs.

As an alternative basis for exercising personal jurisdiction, the partial commission of certain torts directed at the forum state, in combination with other forum contacts, can establish minimum contacts. *See Wein Air Alaska*, 195 F.3d at 211-13. "The foreseeable effects of a tort 'are to be assessed as *part* of the analysis of the defendant's relevant contacts with the forum.'" *Id.* at 212 (quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). Even though the mere existence of interstate communications is generally insufficient to establish personal jurisdiction, the actual content of the communications may give rise to jurisdiction. *Id.* at 213. In *Wein Air Alaska*, letters, faxes, and phone calls containing fraudulent misrepresentations and promises sent to the plaintiffs by a non-resident defendant constituted purposeful availment because of the nature of the content and the consequences that would foreseeably result in the recipient's forum. *Id.* The present case is factually similar. Because the Texas plaintiffs allegedly relied upon the representations made by defendant, which were, at the very least, targeted towards Texas residents, the torts of negligent misrepresentation and fraud partially would have been committed in Texas. Moreover, it was entirely foreseeable that the alleged promises would induce plaintiffs to accept the Platinum proposal. In fact, defendant not only foresaw such an act, but encouraged and likely wanted the plaintiffs to accept the proposal.

The analysis under the second prong focuses on whether notions of fair play and substantial justice would be violated by the exercise of jurisdiction. Such an inquiry generally centers on the burden to the defendant of litigating in the forum; the plaintiff's interest in convenient and effective relief; interest in efficient resolution; and the state's interest in furthering social policies. *Id.* at 215. Where tortious activities "give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the [D]ue [P]rocess clause, given the obvious interests of the plaintiff and the forum state." *Id.* In fact, after establishing minimum contacts, "the interests of the forum and the plaintiff justify even large burdens on the defendant." *Id.* (citing *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 115 (1987)). Thus, the court's exercise of personal jurisdiction is appropriate.

2.   **Venue**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Furthermore, "[t]he district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(b). Defendant insists that plaintiff's failure to directly respond to the motion to dismiss equates to an improper motion to transfer venue because defendant did not actually move for transfer of venue. Dkt. 31. However, "[a] transfer of venue may be made upon the motion of any party or by the court *sua sponte*." *Empty Barge Lines II, Inc. v. Dredge Leonard Fisher*, 441 F. Supp. 2d 786, 789 (E.D. Tex. 2006) (citing *Mills v. Beech Aircraft Corp.*, 886 F.2d 758, 761 (5th Cir. 1989); *Caldwell v. Palmetto State Sav. Bank of S.C.*, 811 F.2d 916, 919 (5th Cir. 1987); *Republic of Bol. v. Philip Morris Cos.*,

39 F. Supp. 2d 1008, 1008-09 (S.D. Tex. 1999); 15 CHARLES A. WRIGHT, ARTHUR R. MILLER, & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3844 (2d ed. 1986)).  The transferring court may even effect the transfer if it lacks personal jurisdiction.  *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) (observing that 28 U.S.C. § 1406(a) is "amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not").  *Accord Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986); *Drayton Enterprises, L.L.C. v. Dunker*, 142 F. Supp. 2d 1177 (D.N.D. 2001).  In assessing whether a different forum is more appropriate, the court analyzes several public and private interest factors, none of which are given dispositive weight.  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir 2004).  "The private concerns include: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)).  "The public concerns include: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.*

With respect to the private concerns, defendant maintains that the burden of trial in Texas is significant because the majority of witnesses and relevant documents are located in Virginia. Dkt 28.  Convenience to key witnesses is often the most important consideration in determining whether to transfer venue.  *Feliciano v. Texaco, Inc.*, 144 F. Supp. 2d 741, 742-43 (S.D. Tex. 2001).  By transferring venue to Virginia, the costs of attendance for willing witnesses are likely to be

9

ameliorated or, at the very least, significantly decreased. Moreover, in their reply to defendant's motion to dismiss, plaintiffs explicitly stated that they did not oppose transfer to the Eastern District of Virginia. Dkt. 30. Hence it can be inferred that plaintiffs do not anticipate an insurmountable financial or logistical burden by trying the claim in Virginia.

The primary public concerns likely involve the local forum's interest in having local disputes resolved in the forum and the familiarity of the forum with the law that will govern the case. Texas has a significant interest in protecting its citizens from non-residents who commit torts against them; yet, Virginia also wants to oversee entities that are organized under its laws and promote social and corporate policies for these entities. Additionally, assuming *arguendo* that the Virginia choice-of-law provision is enforceable, federal courts sitting in Virginia are likely to be more familiar with Virginia law and its application.

Moreover, defendant does not seem to challenge the jurisdiction of the federal courts generally. In fact, defendant consented to removal when it was initiated by former defendant Seifert.[2] Additionally, defendant highlighted key facts signaling to this court that Virginia is the more appropriate forum. Dkt. 28. For example, defendant asserted that: the majority of relevant activities occurred in Virginia; the defendant is a Virginia resident; and the contract included a Virginia choice-of-law provision. Thus, the court finds that the Eastern District of Virginia is the appropriate forum for this case.

---

[2] Defendant Liberty Capitol consented to the removal subject to its Special Appearance. Dkt. 28.

### III. Conclusion

Defendant's motion to dismiss for lack of personal jurisdiction is DENIED. Further, the case is TRANSFERRED to the Eastern District of Virginia.

It is so ORDERED.

Signed at Houston, Texas on October 4, 2007.

_____
Gray H. Miller
United States District Judge